# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RAYMOND W. SHEEHAN and
LYNN SHEEHAN,

        Plaintiffs,

     v.                              Case No. 04-C-717

MONACO COACH CORPORATION,

        Defendant.

## DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action was commenced on June 21, 2004, when the plaintiffs, Raymond Sheehan and his wife, Lynn Sheehan, (the "Sheehans") filed a complaint in the Circuit Court for Kenosha County, Wisconsin alleging breach of express and implied warranties as well as a violation of Wisconsin's motor vehicle lemon law. On July 26, 2004, the defendant, Monaco Coach Corporation ("Monaco") removed this action to the United States District Court for the Eastern District of Wisconsin on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1441. On January 13, 2005, the Sheehans filed an amended complaint adding another claim, a violation of the Magnuson-Moss Warranty Act.

Pursuant to the parties' stipulation, on February 25, 2005, the court ordered that the plaintiffs' breach of express and implied warranty claims and violation of Wisconsin's motor vehicle lemon law be dismissed with prejudice. Moreover, pursuant to the parties' stipulation, on February 25, 2005, the court also ordered that Florida state law shall apply to the plaintiffs' only remaining claim, that is, a violation of the Magnuson-Moss Warranty Act.

Currently pending before the court is the defendant's motion for summary judgment which is fully briefed and is ready for resolution. For the reasons which follow, the defendant's motion for summary judgment will be granted in part and denied in part.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendant's motion for summary judgment was accompanied by a set of proposed findings of fact. Likewise, the plaintiff's response to the defendant's motion for summary judgment was also accompanied by a set of proposed findings of fact.[1] In its reply, the defendant responded to the plaintiff's proposed findings of fact. A review of the parties' respective proposed findings and the amended complaint and answer thereto reveal that the following are the material and (except where noted) undisputed facts that are relevant to the disposition of the defendant's motion for summary judgment.

The Sheehans are residents of Salem, Wisconsin. Monaco is a corporation with its principal offices located in Coburg, Oregon, and is in the business of manufacturing Beaver Contessa motor homes, which are distributed throughout the United States. The 2002 Monaco Beaver Contessa motor home ("2002 Beaver"), vehicle identification number IRFC3564033019228, which is the subject of this litigation, was manufactured by Monaco's Beaver Division.

On March 20, 2003, the Sheehans purchased the 2002 Beaver from Landry's Work'N Play in Fort Myers, Florida for the amount of $288,491.28. The Sheehans received a copy of the 2002 Beaver's limited twelve month/12,000 mile written warranty at or before the time of sale.

---

[1] Because the plaintiffs did not respond to the defendant's proposed findings of fact, the court concludes, pursuant to Local Rule 56.2(e), that these facts are not genuinely in dispute.

Case 2:04-cv-00717-WEC    Filed 01/25/06    Page 2 of 26    Document 52

Monaco's limited warranty for the 2002 Beaver at issue, which was provided to the Sheehans at the time of purchase, is entitled:  **BEAVER MOTORHOME LIMITED WARRANTY**. (DPFOF ¶ 9.)

The 2002 Beaver, while at Landry's Work'N Play in Florida, had problems that could not be fixed by Landry's and, therefore, an appointment was set up with the Monaco factory in Indiana for repair of the 2002 Beaver.  (PPFOF ¶ 6; Def.'s Resp. to PPFOF ¶ 6.)

The Sheehans allege that the following is a nonexhaustive list of the multiple problems that were to be addressed by Monaco when the 2002 Beaver was at Monaco's Indiana factory:

- Living room on the motor home leaking water
- Ceiling stained from the water problems
- Woodwork being damaged in the vehicle
- The Galley slide out moving out and sliding out of the motor home while vehicle is traveling.
- The Galley slide out leaks into the overhead cabinets when is in and when it is out.
- Bedroom slide out making a lot of noise when operating sliding in and out.
- Defrost Vent on the dash was broke
- Refrigerator door panel on the right side was water stained.
- Rubber Mats coming off the steps to the vehicle
- Scratches on the dinette table
- Front security curtains are water stained.
- Carpet under passenger seat coming up.
- Second window from driver's seat on slide out needed blind to be replaced
- Scrape on sink on the top galley slide out.
- Satellite will not stay on track
- Water comes out of ceiling speaker behind driver seat
- Value extensions missing on rear wheels
- Awning fabric on driver side on main slide out was mildewed
- Motor home would not stay level
- Freshwater dump switch inoperable
- Galley slide out awning was not hung straight
- Windshield leaked down the center post
- Paint peeling off the lower trim
- Repair side of Galley slide out as needed due to moving patio arm.

(Am. Compl. at ¶ 9.)

3

The Sheehans further allege that after the 2002 Beaver was at the Monaco Indiana factory for repairs, the 2002 Beaver continued to have the water leaking problem, the slide out problems, and the mold problems. (Am. Compl. at ¶ 12.) The Sheehans also allege that the motor home's water leaking problem created a severe mold problem and that Raymond Sheehan developed medical problems while operating in the mold-contaminated vehicle. (Am. Compl. at ¶¶ 10, 13.)

The motor home never went back in for work with Monaco, due to the fact that after the last time it went to Monaco's Indiana factory for approximately fifty-seven days, there was more damage on the vehicle after they got the vehicle back from the Indiana factory. (PPFOF ¶ 5.)

Raymond Sheehan was told by the Indiana factory that the vehicle could never be fixed right and that a new motor home should be given to him. (PPFOF ¶ 6; Def.'s Resp. to PPFOF ¶ 6.)

Monaco admits that the Sheehans requested repair of the 2002 Beaver and states that those requested repairs were made in accordance with Monaco's limited written warranty. (Answer to Am. Compl. ¶ 8.) Monaco also admits that the Sheehans requested a replacement motor home but denies that it was because the 2002 Beaver could not be repaired. (Answer to Am. Compl. at ¶ 12.)

The Sheehans have owned seven motor homes, including the 2002 Monaco Beaver Contessa motor home at issue in this case. (Def.'s Proposed Finding of Fact ("DPFOF") ¶ 4.) The seven motor homes the Sheehans have owned include a 1996 Monaco Holiday Rambler Endeavor, a 1999 Monaco Beaver Contessa, and the 2002 Monaco Beaver Contessa at issue in this case. (DPFOF ¶ 5.)

The Sheehans have not read the limited warranties for any of their Monaco motor homes they have purchased. (DPFOF ¶ 7.) Although the Sheehans did not read the warranties for their Monaco

4

motor homes, they knew that the warranties did not cover some items in the motor homes.  (DPFOF ¶ 8.)

The 2002 Beaver's Limited Warranty states:

DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES:

THE ORIGINAL PURCHASER OF THE MOTORHOME AND ANY PERSON TO WHOM THE MOTORHOME IS TRANSFERRED, AND ANY PERSON WHO IS AN INTENDED OR UNINTENDED USER OR BENEFICIARY OF THE MOTORHOME, SHALL NOT BE ENTITLED TO RECOVER FROM WARRANTOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM ANY DEFECT IN THE MOTORHOME. THE EXCLUSION OF CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL BE DEEMED INDEPENDENT OF, AND SHALL SURVIVE, ANY FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.  Some states do not allow the exclusion or limitation of consequential or incidental damages, so the above exclusions may not apply to you.

(DPFOF ¶ 10.)

Raymond Sheehan never signed the warranty registration form that is shown as Exhibit 2 of his deposition.  The signature for the motorized warranty registration form was completed by someone other than Raymond Sheehan.  On information and belief, it was completed by the salesperson at Landry's Work'N Play in Florida.  (Pl.'s Proposed Finding of Fact ("PPFOF") ¶ 2.)

Raymond Sheehan also testified regarding what the warranty does not cover, ("wire blades, tire wear and [tear]") and that he was not concerned with what the warranty did not cover because "[w]henever [he's] taken something back to be fixed it's always been fixed if it's in [the] warranty." (PPFOF ¶ 3; Raymond Sheehan Dep. at 30, lines 8-17.)

## II. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003)

6

(quoting *Anderson*, 477 U.S. at 255).  "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'"  *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425).  "The evidence must create more than some metaphysical doubt as to the material facts." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (internal quotations omitted).  A mere scintilla of evidence in support of the nonmovant's position is insufficient.  *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## III.  ANALYSIS

Monaco moves for summary judgment arguing that the Sheehans are not entitled to a refund under  the Magnuson-Moss Warranty Act ("the Act") because the refund/replacement provision of the Act only applies to full warranties, not limited warranties.  Monaco further argues that the Sheehans' claim for consequential damages must similarly fail because the 2002 Beaver's limited warranty conspicuously disclaims liability for consequential damages.

The Act provides that:

In order for a warrantor warranting a consumer product by means of a written warranty to meet the Federal minimum standards for warranty–

(1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;

(2) notwithstanding section 2308(b) of this title, such warrantor may not impose any limitation on the duration of any implied warranty on the product;

7

(3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and

(4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, *such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be)*. The Commission may by rule specify for purposes of this paragraph, what constitutes a reasonable number of attempts to remedy particular kinds of defects or malfunctions under different circumstances. If the warrantor replaces a component part of a consumer product, such replacement shall include installing the part in the product without charge.

15 U.S.C. § 2304(a) (emphasis added). The Act also provides that "[i]f the written warranty does not meet the federal minimum standards for warranty set forth in section 2304 . . . then it shall be conspicuously designated a 'limited warranty.'" 15 U.S.C. § 2303(a)(2).

In light of these statutory provisions, Monaco argues that limited warranties need not comply with the requirements of section 2304. The court agrees. A limited warranty is not subject to the requirements of section 2304 and thus, "not subject to the Act's substantive remedies, including a refund of the . . . purchase price." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). There can be little dispute that the written warranty given by Monaco with the purchase of its 2002 Beaver Contessa motor home is conspicuously designated as a limited warranty. (Sear Dec., Ex. 4 at 1; Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Mot.") at 6.) Thus, because the 2002 Beaver Contessa warranty is a limited warranty, not a full warranty, Monaco need not comply with the refund/replacement remedy provided in section 2304(d). Yet, despite Monaco's argument that the court's inquiry regarding this issue should end here, it shall not.

Monaco argues that the Sheehans' claim for a refund/replacement must be dismissed in its entirety. This is because the Sheehans' only remaining claim is a violation of the Act, and as a

8

matter of law, Monaco did not violate the Act by not complying with the requirements of section 2304. However, to prove a violation of the Act, a plaintiff need not prove a violation of the substantive provisions of the Act. Indeed, a plaintiff may prove a violation of the Act by pleading and proving a breach of a written or implied warranty. The Act states that "a consumer who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under [the Act] *or* under a written warranty, implied warranty or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(a)(3), (d)(1) (emphasis added). Simply stated, the Act creates a federal private cause of action for individual consumers to sue for breach of written or implied warranties pertaining to consumer products.

In their amended complaint, the Sheehans allege the following: "Monaco has failed to conform Plaintiffs' motor home to its express written warranties and implied warranties, each of which violates the Magnuson-Moss Warranty Act." (Am. Compl. at ¶ 31.) The Sheehans further allege that:

> Monaco's violation of the Magnuson-Moss Warranty Act entitles Plaintiffs to (i) revoke acceptance of the motor home, (ii) receive a full refund of the purchase price of the motor home plus all out of pocket expenses related to the motor home, (iii) recover loss of use damages measured by the cost to rent a like motor home for the periods during which the subject motor home has not conformed to the written or implied warranties, and (iv) compensation for their reasonable legal fees and litigation costs incurred in prosecuting this matter.

(Am. Compl. at ¶ 32.) Thus, the Sheehans have adequately alleged that Monaco has failed "to comply with [its] obligation[s] . . . under [its] written warranty, [and its] implied warranty." 15 U.S.C. § 2310(a)(3), (d)(1).

Monaco argues that, because the Sheehans voluntarily dismissed with prejudice their state law breach of express and implied warranty claims, they have "unequivocally opted to sue Monaco

9

solely for an alleged violation of Monaco's obligations under the Act, and ***not*** for an alleged breach of contract or breach of warranty." (Def.'s Br. at 9.) (emphasis in original). Specifically, Monaco argues that the Sheehans may not "defeat Monaco's motion by relying upon state substantive warranty law, given their voluntary dismissal of all state law warranty claims."[2] (Def.'s Br. at 9.) However, Monaco does not cite *any* authority for this proposition. Nor has this court found any case law establishing that a plaintiff proceeding under the Act for breach of an express or implied warranty must, as a matter of law, also bring breach of warranty claims under state law. Presumably, most plaintiffs will bring breach of warranty claims under both the Act as well as under state law, however, the language of the Act does not compel such a result. Moreover, if this court were to adopt Monaco's argument, it would be essentially adding another element to the cause of action created by the Act. The court declines to do so. Therefore, the court will address the Sheehans' breach of implied warranty and breach of written warranty claims under the Act.

### A. Breach of Implied Warranty

Under the Act, a consumer who is damaged by a warrantor's failure to comply with an implied warranty may file a claim in federal court. 15 U.S.C. § 2310(d). The Act defines "implied warranty" as "an implied warranty arising under state law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). The Court of Appeals for the Seventh Circuit

---

[2] After the briefing of the defendant's motion for summary judgment had concluded, the defendant submitted a letter enclosing a Minnesota District Court, Chisago County decision, *Bretheim v. Monaco Coach Corp.* (13-CV-05-511). *See* Sear Letter (Nov. 28, 2005). In its letter, Monaco argues that this case is similar to *Bretheim*. However, in *Bretheim*, the plaintiffs, in response to an interrogatory, stated that "[they had] not asserted . . . a breach of warranty claim." *Id.* at 8. Thus, because the Sheehans have alleged a breach of warranty claim under the Act, and Monaco has not produced any evidence showing that the Sheehans are instead solely seeking relief under the substantive provisions of the Act (as the defendant did in *Bretheim*), the facts of this case are distinguishable.

has held that implied warranty claims asserted under the Act are interpreted solely under state law and thus, if state law requires privity of contract to establish a breach of an implied warranty, privity is also required under the Act. *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). "Because [sections] 2308 and 2304(a) [of the Act] do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the [Act] therefore hinges entirely on the applicable state law." *Id.* (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1014 (D.C. Cir. 1986) and *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986)).

"Under Florida law, a plaintiff cannot recover economic losses for [a] breach of [an] implied warranty in the absence of privity." *Mesa v. BMW of N. Am.*, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988)).  It is undisputed that the parties are not in contractual privity because the Sheehans did not purchase the 2002 Beaver directly from Monaco.  (Am. Compl. at ¶ 5.)  Nor can the Sheehans establish privity of contract based upon the written warranty Monaco extended to them.  *Mesa*, 904 So.2d at 458; s*ee also Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 561 (E.D. Mich. 2004) ("[A]n express warranty running directly from a manufacturer to a buyer does not create contractual privity.").   Thus, because the parties lack privity of contract, the Sheehans' breach of implied warranty claim under the Act fails as a matter of law.

### B.  Breach of Written Warranty Claim

Under the Act, a consumer who is damaged by a warrantor's failure to comply with an written warranty may file a claim in federal court. 15 U.S.C. § 2310(d)(1).  The Sheehans claim that Monaco breached its written warranty by failing to repair the 2002 Beaver or replace its defective parts while

11

it was at Monaco's factory for fifty-seven days. (Am. Compl. at ¶ 12.) The Sheehans also claim that the 2002 Beaver had more problems after it spent those fifty-seven days at Monaco's factory. (PPFOF ¶ 5.) However, while Monaco admits that the Sheehans requested repair of the 2002 Beaver, Monaco claims that the requested repairs were made in accordance with Monaco's limited written warranty. (Answer to Am. Compl. ¶ 8.) Accordingly, a genuine issue of material fact exists as to whether Monaco fulfilled its obligation to repair or replace defective parts under the limited written warranty. Thus, the Sheehans' breach of written warranty claim under the Act will survive summary judgment.

Although Monaco argues that the Sheehans can not establish their breach of written warranty claim because the parties lack contractual privity, contractual privity is not required to bring a breach of written warranty claim under the Act. The Court of Appeals for the Second Circuit has stated that, under the Act, "it is clear that with regard to written warranties, full or limited, privity is not required [to bring a breach of written warranty claim]." *Abraham*, 795 F.2d at 248. "This result [the abolition of privity requirements for breach of written warranty claims under the Act] flows directly from the statutory definitions of 'consumer,' 'supplier,' and 'warrantor,' and from the enforcement provisions authorizing actions by consumers for breach of a written warranty." *Id.*; *see also Skelton v. General Motors Corp.*, 660 F.2d 311, 319 (7th Cir. 1981) (stating that the Act provides "consumers" a federal cause of action for breach of "written warranty," as those terms are defined in the Act). Indeed, courts interpreting the broad definition of "consumer" in the Act, have held that a lessee can bring a claim for breach of written warranty against the product's manufacturer, and a lessee and the manufacturer of the vehicle are certainly not in contractual privity. *Voelker*, 353 F.3d at 525; *O'Connor v. BMW of North America*, 905 So.2d 235, 240 (Fla.. Dist. Ct. App. 2005).

12

Additionally, Monaco argues that because the parties lack contractual privity, even if the Sheehans can establish that Monaco breached its limited written warranty, they are not entitled to the remedy of revocation of acceptance. In support of this argument, Monaco relies upon *Mesa v. BMW of North America, LLC*, 904 So. 2d 350 (Fla. Dist. Ct. App. 2005). (Def.'s Reply Br. at 6.) In *Mesa*, the plaintiff brought, among other claims, a claim for breach of written warranty under the Act *and* a claim for revocation of acceptance. 904 So. 2d at 453. The court, however, held that, even if the plaintiff could establish a breach, revocation of acceptance was not available as a remedy because the parties lacked contractual privity. *Id.* at 459. In so holding, the court stated:

> Although revocation of acceptance can be a remedy for breach of express warranty under the [the Act], we have found no case applying Florida warranty law allowing a plaintiff to seek such a remedy against a manufacturer with whom the plaintiff is not in privity of contract. On appeal, Mesa has not cited to any such case. Other jurisdictions have found that a cause of action for revocation of acceptance requires privity. *See e.g.*, *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1335 (N.D. Ga. 2004).
>
> As discussed in our implied warranty analysis, Mesa could have properly sought revocation under the [the Act] against the lessor with whom she contracted. However, since there was no privity between Mesa and BMWNA, the trial court properly granted summary judgment in favor of BMWNA on the revocation count.

*Id.*

First of all, this court notes that whether a plaintiff can bring a cause of action for revocation of acceptance when the parties lack contractual privity, or, for that matter, whether a consumer has been granted the statutory authority to bring such a cause of action under the Act, is not before this court. The question before this court is, if the Sheehans establish that Monaco failed to conform the 2002 Beaver to its limited written warranty, as provided under the Act, can the Sheehans then seek the remedy of revocation of acceptance for that breach?

13

With regard to this question, the court does not find the *Mesa* court's interpretation of the Act persuasive. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) ("Although state court precedent is binding upon us regarding issues of state law, it is only *persuasive* authority on matters of federal law.") (emphasis added). Although contractual privity is not required for a consumer to bring a breach of written warranty claim against a warrantor under the Act, the *Mesa* court appears to have "resurrected" that privity requirement when determining whether the remedy of revocation of acceptance is available upon breach. The *Mesa* court reasons that "[a]lthough revocation of acceptance can be a remedy for breach of express warranty under the [Act], we have found no case applying Florida warranty law allowing a plaintiff to seek such a remedy against a manufacturer with whom the plaintiff is not in privity of contract." *Mesa*, 904 So. 2d at 459.

Thus, the *Mesa* court appears to base its decision on the following reasoning: because under Florida law the plaintiff could not obtain revocation of acceptance against a manufacturer, due to a lack of contractual privity, the plaintiff therefore should not be allowed to obtain that remedy against a manufacturer under the Act. However, this reasoning, taken to its logical conclusion, would not allow a plaintiff to obtain even monetary damages from a manufacturer under the Act, because the same could not be obtained against a manufacturer under Florida law, absent contractual privity. *Weiss v. Johansen*, 898 So. 2d 1009 1012 (Fla. Dist. Ct. App. 2005), *reh'g denied*, (Apr. 21, 2005) ("[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."). This court does not believe that Congress intended such a result. Nor does this Court believe that by eliminating the privity requirement for a breach of written warranty claim under the Act, Congress intended to "resurrect" that same privity requirement when it came to the remedies available for breach. This is because the Act's purpose was to provide

14

consumers who brought breach of warranty claims under the Act (against a broader range of defendants, i.e. manufacturers) with the same remedies they would have received had they brought the claims under state law. *See Walsh v. Ford Motor Co.,* 627 F. Supp. 1519, 1524-25 (D.D.C. 1986) ("[S]ection 2310(d)(1) was drafted with the intention of preserving whatever state law remedy might be available [to the consumer]. In other words, if [a breach of warranty claim is] brought under state law [under the Act], state law controls the nature of relief to which the consumer is entitled.") (citing the Congressional Record).

This court believes that the proper inquiry to determine whether revocation of acceptance is available as a remedy for breach of warranty under the Act is to look to whether that remedy is available for a breach under state law. The Seventh Circuit has stated that "[w]hen the plaintiff relies on state law causes of action [that is, breach of written or implied warranty] to bring a claim under the [Act] . . . . [the court] then look[s] to state law to determine the remedies available." *Schimmer*, 384 F.3d at 405. Thus, to determine whether revocation of acceptance is available to the Sheehans as a remedy, if they establish a breach, this court must look to the remedies provided for breach of written warranty under Florida law.

Florida law provides that if a consumer establishes that a warranty's limited remedy failed of its essential purpose, then the consumer may seek all of the other remedies available under the Uniform Commercial Code (UCC), including revocation of acceptance. *Griffis v. Leisure Tyme RV, Inc.*, 884 So.2d 241, 243 (Fla. Dist. Ct. App. 2004) ("[T]he trial court would also need to determine whether the warranty failed of its essential purpose, so that the buyers would be entitled to invoke all other remedies available under the Uniform Commercial Code, including the remedy of revocation of acceptance.") As stated in section 672.719(2) of the Florida Statutes, "[w]here

15

circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code." Fla. Stat. § 672.719(2). Consistent with this provision, Florida courts have recognized that if a plaintiff proves that an exclusive, limited remedy provided in a warranty fails of its "essential purpose," then the consumer may "resort . . . to the additional remedies of the UCC." *Tampa Farm Serv., Inc. v. Cargill, Inc.*, 356 So. 2d 347, 350 (Fla. Dist. Ct. App. 1978); *Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1292 (Fla. Dist. Ct. App. 1985) (stating that "since the provision for repair or replacement had failed of its essential purpose . . . recourse may be had to the remedies of the UCC").

Thus, if the Sheehans establish that the limited remedy provided in the warranty failed of its essential purpose, they may then seek the additional remedies provided under Florida's codification of the UCC, including revocation of acceptance.[3] However, it is worth noting that, to ultimately succeed in obtaining the remedy of revocation of acceptance, the Sheehans must also establish the requirements set forth in section 672.608, which include, *inter alia*, that the 2002 Beaver's "nonconformit[ies] substantially impair[] its value." Fla. Stat. 672.608(1). It is also worth noting that if the jury were to find that the Sheehans could revoke acceptance of the 2002 Beaver, Monaco would also be entitled to re-take possession of the motor home, and would be entitled to a credit for the value the Sheehans received from their use of the 2002 Beaver while it was in their possession.

---

[3] Allowing a buyer to seek the remedy of revocation of acceptance against a remote manufacturer under the Act is not a novel concept. *See Ventura v. Ford Motor Co.*, 433 A.2d 801, 811 (N.J. Sup. Ct. App. Div. 1981) ("Once privity is removed as an obstacle to relief we see no reason why a purchaser cannot also elect the equitable remedy of returning the goods to the manufacturer who is a warrantor and claiming a refund of the purchase price less an allowance for use of the product."); *see also id.* ("We are dealing with the breach of an express contractual obligation. Nothing prevents us from granting an adequate remedy under state law for that breach of contract, including rescission when appropriate.").

16

However, this court need not address the damages issue with any specificity at this point, because there is a genuine issue of material fact as to whether there was a breach of the limited written warranty, and also as to whether the limited remedy failed of its essential purpose.

## C. Disclaimer of Consequential Damages

In their complaint, the Sheehans allege that Monaco's breach of its limited written warranty entitles them to receive "all out of pocket expenses related to the motor home . . . [and] recover loss of use damages measured by the cost to rent a like motor home for the periods during which the subject motor home has not conformed to the written or implied warranties." (Am. Compl. at ¶ 23.) However, the 2002 Beaver's Limited Warranty, provided to the Sheehans at the time of sale, disclaims all consequential and incidental damages:

> DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES:
>
> THE ORIGINAL PURCHASER OF THE MOTORHOME AND ANY PERSON TO WHOM THE MOTORHOME IS TRANSFERRED, AND ANY PERSON WHO IS AN INTENDED OR UNINTENDED USER OR BENEFICIARY OF THE MOTORHOME, SHALL NOT BE ENTITLED TO RECOVER FROM WARRANTOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM ANY DEFECT IN THE MOTORHOME. THE EXCLUSION OF CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL BE DEEMED INDEPENDENT OF, AND SHALL SURVIVE, ANY FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. Some states do not allow the exclusion or limitation of consequential or incidental damages, so the above exclusions may not apply to you.

(DPFOF ¶ 10; Sear Dec., Ex. 3 at 3.)

The Act provides that warrantors offering a *full* warranty may not limit or exclude consequential damages unless the provision appears conspicuously on the face of the warranty. 15 U.S.C. 2304(a)(3) (emphasis added). This provision, however, does not require that any exclusion or limitation of consequential or incidental damages appear conspicuously on the face of a limited

17

warranty.  16 C.F.R. § 701.3(a)(8); *see* Barkley Clark & Christopher Smith, *Law of Product Warranties* § 20:43, (stating that "the [Act] places no restrictions on warrantors who wish to limit liability for consequential damages under a limited warranty").  Thus, because the Act does not address the exclusion or limitation of consequential damages in limited warranties, such exclusion or limitation is governed by state law.  *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (stating that unless expressly modified by Magnuson-Moss, state warranty law applies to all breach of warranty claims brought under the Act).

Florida law provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."  Fla. Stat. Ann. § 672.719(3).  The Sheehans argue that the limited warranty is  "adhesion in nature . . . [because the Sheehans] had no opportunity to negotiate its terms" and because they are not "sophisticated parties."  (Pl.'s Br. at 18.)  Thus, the Sheehans appear to be arguing that the consequential damages disclaimer is unconscionable.  Under Florida law,

> "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and

18

the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

*Fotomat Corp. of Florida v. Chanda*, 464 So. 2d 626, 628-29 (Fla. Dist. Ct. App. 1985) (quoting

*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449-50 (C.A.D.C. 1965)).

When determining whether a contract or a clause thereof is unconscionable, Florida courts

look to whether the contract or clause thereof is both procedurally unconscionable and substantively

unconscionable. *Id.* at 630. When determining procedural unconscionability, the court looks to

> "those factors bearing upon . . . the 'real and voluntary meeting of the minds' of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The 'substantive' heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable. . . . Most courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability."

*Id.* at 629 (quoting *Kohl v. Bay Colony Club Condominium, Inc.*, 398 So.2d 865, 868 (Fla. Dist. Ct.

App.), *review denied*, 408 So. 2d 1094 (Fla.1981)).

This court finds that the limited written warranty's consequential damages disclaimer is not

procedurally unconscionable. While the Sheehans argue that they are not "sophisticated parties," in

light of the fact the Sheehans were experienced motor home purchasers, the court does not find that

argument persuasive. Indeed, the 2002 Beaver was the Sheehans' seventh motor home. (DPFOF ¶

4.) Moreover, while whether Mr. Sheehan read the warranty at the time of sale is in dispute, it is

undisputed that the Sheehans received a copy of the limited written warranty at the time of the sale.

(PPFOF ¶ 2). And, although the consequential damages disclaimer is not on the first page of the

warranty, it is referenced on the first page, and it is indeed conspicuous, as it is set apart from the

19

other provisions, is in all capital letters, and is in bold typeface. (Sear Dec., Ex. 4 at 3.) It is true that the Sheehans were not given an opportunity to negotiate the terms of the limited written warranty. However, if the Sheehans would have read the warranty at or before the time of sale, and had decided that they did not approve of the consequential damages disclaimer, they could have looked into buying a different brand of motor home. Thus, this court finds that the evidence falls short of showing procedural unconscionability, and therefore, need not discuss substantive unconscionability.

Even in light of this court's finding that the disclaimer is enforceable, the Sheehans argue that if they can prove that Monaco's limited written warranty failed of its essential purpose, then the consequential damages disclaimer should be unenforceable. As aforementioned, if an exclusive or limited remedy fails of its essential purpose, then the aggrieved buyer is free to pursue all remedies set forth in Article 2 of the UCC, as though the limit had not appeared in the contract. Whether a buyer should be free to pursue incidental and consequential damages, even if they have been disclaimed, when a limited remedy has failed of its essential purpose has not been addressed by the Florida courts.[4] *See Skyline Computer Corp. v. Encore Computer Corp.*, 699 So.2d 1048 (Fla. Dist. Ct. App. 1997) (stating that "we do not reach the question of whether damages are recoverable under sections 672.714 and 672.715, Florida Statutes, when a limited warranty has failed of its essential

---

[4] Moreover, the state courts that have addressed this issue appear to be rather closely divided. *See Art Press Ltd. v. Western Printing Machinery Co.*, 852 F.2d 276, 277-78 (7th Cir. 1988) ("The availability of consequential damages in the face of such disclaimers, when the contractually-limited remedies fail of their "essential purpose," has divided the courts that have discussed § 2-719(2) of the UCC." (citing Howard Foss, *When To Apply The Doctrine Of Failure Of Essential Purpose To An Exclusion Of Consequential Damages: An Objective Approach*, 25 DUQUESNE L. REV. 551 (1987), and Jonathan A. Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of UCC Section 2-719(2)*, 65 CAL. L. REV. 28 (1977), both articles collect cases and discuss the problems in interpreting the UCC's language).

20

purpose and a separate contractual provision excludes liability for 'incidental, consequential, or indirect damages of any kind'").

As a federal court applying state law, this court is required to apply the law as declared by the state's highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Florida Supreme Court, however, has not answered whether a consequential damages disclaimer is void when a limited or exclusive remedy fails of its essential purpose. In the absence of authority directly on point, this court must determine the issues of state law as it believes the Florida Supreme Court would. *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). Typically, if there are state appellate court decisions addressing the issue, the federal court gives those decisions great weight. In this case, however, no state appellate court decisions addressing the issue have been found, by the court or by the parties. Indeed, this court has not found *any* Florida case directly addressing the issue. Nor has either party cited to *any* Florida case directly on point.

As the Seventh Circuit has noted, in the absence of any state supreme court or appellate court authority on point, "reasoning from what state or federal courts in other jurisdictions have done is acceptable." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999). However,

> a federal court sitting in diversity must proceed with caution in making pronouncements about state law. In any diversity case, what we say lacks any precedential force for state courts. *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1395 (7th Cir. 1992). While it is controlling upon federal district courts until gainsaid by a higher state court, nonetheless, as Judge Ripple of this Circuit has remarked, "it is rarely possible, given the difficulty in making ' Erie Guesses,' to provide, in any principled fashion, a great deal of meaningful guidance for the resolution of future cases. Moreover, federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1416 (7th Cir. 1994) (Ripple, J., dissenting on other grounds). Such pronouncements risk

21

> "interrupt[ing] . . . the orderly development and authoritative exposition of state law
> . . . by sporadic federal court adjudications." *Factors, Etc., Inc. v. Pro Arts Inc.*, 652
> F.2d 278, 282 (2d Cir. 1981). If our predictions are erroneous, then, as Judge Sloviter
> has said: [U]ntil corrected by the state supreme court, [they] inevitably skew the
> decisions of [those] who rely on them and inequitably affect the losing federal litigant
> who cannot appeal the decision to the state's supreme court; they may even mislead
> lower state courts that may be inclined to accept federal predictions as applicable
> precedent.

*Id.* at 1092-93.

Accordingly, and with the foregoing in mind, the court must best estimate how the Florida Supreme Court would decide this issue on the facts of this case. In so doing, the court may consider both the decisions of the courts of other jurisdictions, as well as other persuasive authorities. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 417 (7th Cir. 1997). In light of the fact that the state courts that have addressed this issue appear to be rather closely divided, this court has looked to other persuasive authorities, specifically, the *Uniform Commercial Code*. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 12-10 (4th ed. 2005). In discussing the buyer's argument, that the failure of essential purpose of the original remedy also voids the restriction on consequential damages, White & Summers note that buyers typically rely upon Comment 1 to section 2-719, which states that a remedy that fails "must give way to the general remedy provisions of this Article." *Id*. However, according to White & Summers, courts that accept these buyers' arguments are mistaken. *Id.*

Rather, according to White & Summers, the correct approach under the Code, and the majority view (albeit a close majority) of the courts that have addressed this issue, is that expressed in *American Electric Power Co., Inc. v. Westinghouse Electric Corp.*, 418 F. Supp. 435 (S.D.N.Y. 1976).

22

> [W]e favor the *American Electric Power* line of cases. Those cases are most true to the Code's general notion that the parties should be free to contract as they please. The text of the Code disfavors judges' and juries' rewriting contracts that allocate risks between the parties. UCC sections 1-102, 2-316, 2-719, and many other accord primacy to the terms of the contract over the general law of the Code. Indeed, as to remedies, 2-719(1)(a) and (b) provide that the parties may provide for remedies "in substitution for those provided in the article" and that the parties may make such remedies "exclusive."

White & Summers, at § 12-10. This court believes that if this question was presented to the Florida Supreme Court, especially in light of the specific facts of this case, that court too would agree with the majority view as expressed in *American Electric Power* ("*AEP*").

In *AEP*, as in this case, the defendant argued that even if the plaintiff can show that the limited remedy failed of its essential purpose, the disclaimer of consequential damages stands independently of the remedy limitation and therefore, the plaintiff is still precluded from recovering consequential damages. 418 F. Supp. at 455. Plaintiffs, however, argued that the court should read the limited remedy of repair or replacement and the limitation of liability clause as dependent provisions, such that if the exclusive remedy of repair and replacement fails, defendant would not be entitled to rely on the contractual exclusion of consequential damages. *Id.* at 456. After reviewing the cases relied upon by the plaintiff and the defendant, the court held that the interpretation of section 2-719(2) of the UCC urged by the defendant was the more appropriate one. *Id.* at 457.

Specifically, the court relied on the fact that the limited remedy provision did not appear to be dependent upon the consequential damages disclaimer.

> One provision of that contract contains defendant's warranty to repair or replace defective parts. A totally separate provision expressly limits the defendant's liability such that special or consequential damages may not be recovered. As the court held in *County Asphalt*, *supra*, where an exclusive remedy (such as a warranty to repair

23

> or replace) fails of its essential purpose, it may be ignored, and other clauses in the contract which limit remedies for breach may be left to stand or fall independently of the stricken clause.

*Id.* Similarly, in this case, one provision of the warranty provides the limited remedy of repair or replacement of defective parts, and a completely separate provision limits the defendant's liability such that incidental and consequential damages may not be recovered. (Sear Dec., Ex. 4 at 2, 3.) Moreover, in this case, the consequential damages disclaimer contains a provision specifically stating that "[t]he exclusion of consequential and incidental damages shall be deemed independent of, and shall survive, any failure of the essential purpose of any limited remedy." (Sear Dec., Ex. 4 at 3.) Thus, it would appear that the two clauses are independent and that the parties intended the buyer to bear the burden of consequential and incidental damages if the limited remedy failed of its essential purpose (which, theoretically could have led to a much lower purchase price for the buyer). As the court found in *AEP*, when the provisions are independent of each other "there is no reason to disturb the consensual allocation of risk" agreed upon by the parties. 418 F. Supp. at 458.

Moreover, in *AEP*, the court relied heavily on the fact that even if the remedy failed of its essential purpose, the plaintiff would still be able to obtain a "minimum adequate remedy," an undetermined amount of damages, which simply would not include consequential damages. *Id.* Indeed, this result comports with Official Comment 1 to section 2-719 of the UCC, which provides that:

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect. However, it is of the very essence of a sales contract that at least *minimum adequate remedies* be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.

24

UCC § 2-719, Cmt. 1 (emphasis added). Similarly, in this case, in the event that the jury finds that "the defendant has totally failed to perform its warranty to repair or replace, damages [or any other remedy provided under the Code, except for consequential/incidental damages]. . . will be recoverable," and therefore, a minimum adequate remedy will be available to the Sheehans. *Am. Elec. Power*, 418 F. Supp. at 459. Thus, because this court believes that the Florida Supreme Court would follow the *AEP* line of cases, it finds that even if the Sheehans can show that the limited remedy failed of its essential purpose, they will still be precluded from recovering consequential damages. Accordingly, Monaco's motion for summary judgment precluding the Sheehans from recovering consequential damages will be granted.

## IV. CONCLUSION AND ORDER

For all of the foregoing reasons, this court concludes that the Sheehans' breach of implied warranty claim under the Act fails as a matter of law. This court further concludes that there is a disputed issue of fact as to whether Monaco breached its limited written warranty under the Act, and whether the limited remedy failed of its essential purpose. For all of the foregoing reasons, this court concludes that if the Sheehans can establish that the limited remedy provided in the written warranty failed of its essential purpose, they may seek the remedy of revocation of acceptance, but they will be precluded from seeking incidental or consequential damages. Thus, the defendant's motion for summary judgment will be granted in part and denied in part.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED** in part and **DENIED** in part;

25

**IT IS FURTHER ORDERED** that a status conference be conducted on Thursday, February 9, 2006, at 9:00 a.m. in Room 253 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, WI 53202, for the purpose of discussing with the parties the further pretrial processing of this case.

**SO ORDERED** this  25th  day of January 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge